IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| KENNY INDUSTRIAL SERVICES, LLC, et al., | ) | |
| | ) | Case No. 03 B 04959 |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| DAVID R. HERZOG, not individually but solely as the Ch.7 trustee for Kenny Industrial Services, LLC and its affiliated debtors, | ) | Judge Carol A. Doyle |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adversary No. 05 A 00479 |
| | ) | |
| PRICEWATERHOUSECOOPERS, LLP, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

PricewaterhouseCoopers, LLP ("PWC") has moved to exclude expert testimony and related evidence submitted by the plaintiff, trustee David R. Herzog. PWC argues that evidence relating to one of the expert's opinions should be excluded as a sanction because the trustee failed to identify the issue or produce relevant evidence until after the close of fact discovery. This evidence will be excluded because the trustee failed to disclose it on a timely basis and he has not established a substantial justification for his failure to disclose or that it is harmless.

I.  **Background**

Kenny Industrial Services, LLC filed a chapter 11 bankruptcy petition in February 2003. The case was converted to chapter 7 in January 2004 and David Herzog was appointed as trustee. In February 2005, the trustee filed this adversary proceeding against PWC alleging that PWC's audit report of Kenny's 2000 and 2001 financial statements contained negligent misrepresentations that contributed to Kenny's insolvency and subsequent bankruptcy.

The discovery cut-off for fact discovery in this case was extended eight times. The FBI seized some of Kenny's documents in 2003 and retained them for many months, the parties attempted to mediate the dispute, and Kenny changed counsel mid-stream. The parties also agreed to a number of extensions for various other reasons but the court refused to extend fact discovery beyond the last cut-off date of December 31, 2008.

On January 15, 2009, the Trustee served expert disclosures that identified for the first time an alleged $4 million error in Kenny's financial statements that PWC did not identify in its audit report. David Wallace, the trustee's liability expert, contends that PWC failed to detect a significant error in Kenny's accounting for two customer contracts that were not fully performed at the time the financial statements were prepared. Wallace later served an amended report that lowered the alleged error to $2.3 million.

Wallace testified at his deposition that he based his opinion on financial reports obtained with the assistance of Richard Nowacynski, a former Kenny employee. Nowacynzki now works for K2, the company that purchased Kenny's assets from the bankruptcy estate in 2003. Nowacynski is the custodian of a database of Kenny's financial records that was transferred to

K2. The trustee claims that he was not "aware" of this financial data base until the fall 2008, although he does not deny that he had possession of it during the entire case.[1] In December 2008, at Wallace's request, Nowacynzki provided Wallace with a CD containing over 26,000 pages of financial reports obtained from the database. Wallace used some of these reports to support his opinion regarding the alleged costs over billings error.

PWC contends that the trustee did not disclose this alleged $2.3 million error or the evidence relating to it until after the close of fact discovery. PWC argues that the trustee's failure to disclose this alleged error is an abuse of discovery that prevented PWC from taking fact discovery on the issue and warrants exclusion of the evidence under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

The trustee responds that he testified during his Rule 30(b)(6) deposition that Kenny made errors in its treatment of costs in excess of billings on uncompleted contracts. He also argues that he informed PWC's counsel of the existence of the financial database relied on by Wallace during a discovery meeting in the fall of 2008 and offered to generate any reports PWC requested from the database. He admits, however, that he never identified any specific errors regarding costs over billings or the two contracts that are the subject of Wallace's opinion until after the close of fact discovery.

---

[1] The court ruled in 2007 that the trustee had unfettered access to the documents held by K2 so he had possession, custody and control of them for purposes of Rule 34 of the Federal Rules of Civil Procedure.

## II.     Standard

Rule 26(a) of the Federal Rules of Civil Procedure requires litigants to make initial disclosures of information relevant to the case. Fed. R. Civ. P. 26 (a); Fed. R. Bankr. P. 7026. Rule 26(e) imposes a continuing duty to supplement "in a timely manner" the disclosures made under Rule 26(a), as well as responses to interrogatories, requests for production and requests for admission. Fed. R. Civ. P. 26(e); Fed. R. Bankr. P. 7026.

Rule 37(c) provides that the consequence of failing to comply with Rule 26(a) and (e) is that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Excluding evidence at trial as a sanction for failure to disclose under Rule 26(c) in a timely manner is "automatic and mandatory" unless the party can show that the violation was "either justified or harmless." David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003); SEC v. Roszak, 495 F. Supp. 2d 875, 884-85 (N.D. Ill. 2007).

## III.    Trustee's Failure to Disclose

The trustee failed to inform PWC until after the close of fact discovery about the alleged significant error in Kenny's financial statements regarding costs in excess of billings for two uncompleted contracts. He failed to identify this issue and relevant evidence in his initial disclosures, his original interrogatory answers and responses to document requests, his supplements to his initial disclosures and discovery responses, or in his Rule 30(b)(6) deposition testimony. Not until after fact discovery closed nearly four years after the trustee filed this case

did he identify for the first time an alleged $2.3 million error relating to two specific customer contracts.

**- Rule 26(a) Disclosures**

The Trustee did not disclose this issue in his Rule 26(a) initial disclosures and later supplements. Rule 26(a)(1) provides, in relevant part, that "a party must, without awaiting a discovery request, provide to the other parties:

> (i) the name . . .of each individual likely to have discoverable information – along with the subject of that information – that the disclosing party may use to support its claims or defenses . . .
>
> (ii) a copy . . . of all documents . . .that the disclosing party . . . may use to support its claims or defenses . . .
>
> (iii) a computation of each category of damages . . . [and] the documents or other evidentiary material . . . on which each computation is based . . . .

This rule required the trustee to identify witnesses with knowledge of the issues and the subject matter of the witnesses' knowledge, to identify documents relevant to the trustee's claims, and to provide a computation of damages for each category of damages claimed. The trustee's initial disclosure was very general and gave no hint of the costs in excess of billings issue or any other specific error committed by PWC. He identified only broad categories of documents, such as "financial documents of Kenney." The damage calculation contains no discussion of the alleged $2.3 million error. The trustee served a second supplement to his initial disclosures on December 17, 2008, two weeks before the close of fact discovery, but the supplement did not mention this issue, the financial data base on which Wallace relied or Nowazynski, the keeper of the data base.

**- Interrogatories and Document Requests**

PWC served document requests and interrogatories requesting the trustee to identify the specific errors the trustee claimed PWC made in its audit and any documents that supported the trustee's claims. In interrogatories, PWC asked the trustee to identify everything false and misleading about its audit report, including:

> Identify all of the statements made by PWC in the Report which Kenny and/or the Trustee believes to be false or misleading. For each statement state:
>
>> (a) the precise statement which Kenny and/or the Trustee believe to be false;
>> (b) the basis for the belief that the statement is false;
>> (c) the basis for the belief that PWC was negligent or careless in ascertaining the truth or falsity of the statement; and
>> (d) the specific auditing standard or practice that Kenny and/or the Trustee believe was violated with respect to each statement. . . .

PWC's document requests were similarly specific. They included the following:

> All documents supporting the contention . . . that PWC failed to confirm Kenny's actual financial condition and to disclose that condition properly in the Financial Statements. . . .
>
> All documents supporting the contention . . . that PWC made false statements of material fact in its Report. . . .
>
> All documents referred to or relied upon in responding to any interrogatories or requests to admit which are propounded by Defendant PWC. . . .

These discovery requests asked the trustee to state specifically what was wrong with PWC's audit report and to provide PWC with all the evidence supporting the trustee's claims. In response to these requests, the trustee never identified costs in excess of billings as an issue at all, let alone that the alleged error concerned the two contracts later identified by Wallace. The trustee amended his discovery responses as late as

December 17, 2008, but he still failed to identify the alleged $2.3 million costs over billings error or the two contracts giving rise to the error.

- **Rule 30(b)(6) Deposition**

PWC served a Rule 30(b)(6) notice of deposition on the trustee. The notice identified a number of subjects for testimony, including the specific factual basis for the trustee's contentions that Kenney's financial statements were materially false and misleading and that PWC failed to discover the true financial situation of Kenney. The trustee testified as Kenny's Rule 30(b)(6) witness in June and October, 2008.

During the deposition, PWC's attorney asked the trustee to identify specific errors in Kenny's financial statements and mistakes made by PWC's. The trustee testified that he believed PWC should have done additional testing with respect to costs over billings on uncompleted contracts. He also stated that PWC's auditors should have gone to the job sites to determine for themselves the percentage of completion with respect to those jobs. The trustee could not state, however, whether Kenny's costs over billings figure was inaccurate with respect to any of the 20 jobs PWC tested or any other contracts.

The trustee's general testimony that the believed there were problems with costs over billings did not give PWC fair notice of the costs over billings issues finally disclosed in the Wallace's expert report. As a Rule 30(b)(6) witness, the trustee should have given specific, direct responses to questions about alleged errors in Kenny's financial reports. See Buycks-Roberson v. Citibank Fed. Savings Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995) (a party has a duty to provide a Rule 30(b)(6) witness with the

requisite knowledge and to prepare the witness, despite the difficulty of investigating the subject matter requested by the deposing party); Stallings-Daniel v. Northern Trust Co., No. 01 C 2290, 2002 WL 385568, at *1 (N.D. Ill. Mar. 12, 2002) (corporation has a duty to adequately prepare its Rule 30(b)(6) witness to testify on specific issues; it must perform at least a basic investigation regarding the subject matter of the deposition so that it can adequately prepare the witness to testify). Instead of identifying any specific facts supporting his claims, the trustee conceded at his deposition that he could not point to any specific errors in Kenny's financial statements that related to costs over billings. This testimony did not give PWC sufficient information to take fact discovery regarding this issue.

### IV.    The Trustee's Failure to Disclose was Not Justified or Harmless

As noted above, Rule 37(c) provides that if a party fails to provide information required by Rule 26(a) or (e), it may not use that information at trial unless the failure was substantially justified or is harmless. The trustee failed to supplement his initial disclosures or discovery responses to provide any information about the alleged errors regarding costs in excess of billings. Under Rule 37(c), he may use evidence relating to this issue only if there was substantial justification for his failure to disclose or it is harmless. See Fast Food Gourmet, Inc. v. Little Lady Foods, Inc., 542 F. Supp.2d 849, 854 (N.D. Ill. 2008) (excluding evidence that was not disclosed to defendants in amendments to interrogatory answers); Cambridge Elec. Corp. v. MGA Elec. Inc., 227

F.R.D 313, 320-21 (C.D. Cal. 2004) (excluding evidence not disclosed in interrogatory responses). Exclusion of evidence that was not disclosed is mandatory unless the party failing to make disclosures can show that the its violation was justified or harmless. David, 324 F.3d at 857; Independent Trust Corp. v. Fidelity Nat. Title Ins. Co. of N.Y., 577 F.Supp.2d 1023, 1048 (N.D. Ill. 2008); Roszak, 495 F.Supp.2d at 884-85.

The trustee attempts to justify his failure in several ways. First, he contends that he could not give more precise responses in his deposition because expert opinion was necessary to determine whether Kenny made material errors in its financial statements and, if so, whether PWC's auditors should have detected them. The trustee argues that, as in all malpractice cases, an expert is required to establish a violation of the standard of care under "GAAP" and "GAAS". See, e.g., Danis v. USN Comm., Inc., 121 F. Supp. 2d 1183, 1192 (N.D. Ill. 2000); Donais v. U.S., 232 F.3d 595, 598 (7th Cir. 2000). He also contends that the expert could not complete his work until written discovery and deposition testimony was obtained from PWC.

The need for an expert opinion and discovery from PWC is not a substantial justification for the trustee's failure to disclose. The rules place the burden squarely on the trustee to fully identify each of his contentions in the case and produce specific evidence relating to those contentions. Even in a malpractice case, which requires expert testimony regarding the standard of care, the plaintiff has the burden of identifying the specific facts underlying his claims during fact discovery. If the trustee needed an expert

-9-

to help him identify the facts supporting his claims, he should have gotten an expert opinion at the beginning of the case, not almost four years after he filed the case. If the trustee needed fact discovery from PWC to identify facts supporting his contentions, he should have obtained that discovery long before fact discovery closed so that PWC would have a full opportunity the to explore those facts during the fact discovery period. The need to take discovery from PWC does not justify the trustee's failure to identify any facts supporting his claim before the close of discovery. In fact, the documents relied on by Wallace to demonstrate the alleged errors with respect to the two uncompleted contracts came from the K2 financial data base, not PWC's documents. Thus, the trustee did not need discovery from PWC to identify these alleged errors.

The trustee also suggests that his failure to disclose is harmless because PWC knew about the financial database since the fall of 2008 and could have asked the trustee to run searches on it. This offer was useless to PWC, however, without information about the specific errors the trustee would attempt to prove at trial. PWC could not formulate appropriate search requests unless it knew what the issues were.

Thus, the trustee's offer to run searches on the data base for PWC did not render the trustee's failure to disclose harmless. To the contrary, his failure to disclose caused significant prejudice to PWC. It prevented PWC from taking any discovery regarding the facts surrounding the contracts in question and PWC's treatment of those contracts. It

also prevented PWC from taking discovery regarding the reliability of the financial data base.

* * * *

The trustee never gave answers to PWC's interrogatories that identified the costs over billings issues at any time and he never identified specific documents supporting his claim until after the close of fact discovery. The trustee did not even identify the issue or the contracts on which his claim now rests in his December 2008 supplements to his initial disclosures and discovery responses. The trustee's general reference to the cost over billings issue in a Rule 30(b)(6) deposition does not absolve the trustee of his obligation to give complete answers to legitimate interrogatories and document requests. Likewise, the trustee's offer to search a data base for PWC without identifying any specific errors does not absolve the trustee of his obligation to produce specific documents supporting each of his claims. The trustee should have known the facts that supported his claims well before the close of fact discovery and supplemented his discovery responses in time to give PWC a fair opportunity to take fact discovery.

PWC asked the right questions in this case and the trustee failed to provide timely answers. He has not offered a substantial justification for his failure or shown that it is harmless. Under Rule 37(c), the evidence must be excluded.

### V. Conclusion

PWC's motion to exclude all evidence relating to the costs in excess of billings issue is granted.

Dated: June 5, 2009

ENTERED:

_____
CAROL A. DOYLE
United States Bankruptcy Judge